[No. B193566. Second Dist., Div. Three. May 30, 2007.]

LOS ANGELES UNIFIED SCHOOL DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LONG BEACH et al., Real Parties in Interest.

**COUNSEL**

Miller Brown & Dannis, Sue Ann Salmon Evans, Enrique M. Vassallo and Joung H. Yim for Petitioner.

No appearance for Respondent.

Robert E. Shannon, City Attorney, and Michael J. Mais, Assistant City Attorney, for Real Parties in Interest.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

Real parties in interest the City of Long Beach (the City) and its city attorney, Robert E. Shannon, sought records from petitioner the Los Angeles Unified School District (LAUSD) relating to a school construction project. When LAUSD refused to release the records, the trial court issued an order compelling the production of documents under the California Public Records Act (CPRA or the Act). (Gov. Code, § 6250 et seq.)[1] In this petition for extraordinary relief, LAUSD seeks an order to stay the trial court's order.

LAUSD contends that neither the City nor City Attorney Shannon is entitled to request the public documents because they are not "persons" within the meaning of the CPRA (§ 6252). Thus, we are called upon to

---

[1] Unless otherwise noted, all further statutory references are to the Government Code.

address an issue left unresolved by the Supreme Court, "whether a public agency is authorized to . . . seek disclosure of public records in the possession of another public agency." (*Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 431 [121 Cal.Rptr.2d 844, 49 P.3d 194].)

We hold that the City and City Attorney Shannon may obtain public records from LAUSD. We deny the request for extraordinary relief and affirm the order of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

The City is a municipal corporation. Shannon is the duly elected city attorney and an officer of the City.

LAUSD wants to build a public high school on approximately 14 acres within the City at its western boundary, even though the proposed school will serve students residing in the City of Carson. The property currently is used for industrial purposes.

Because the City expects that the school will have an impact on traffic, fire, and police services in its neighborhoods, City Attorney Shannon requested by letter dated January 26, 2006, copies of certain public records relating to the construction project. The request cited the CPRA and asked for the production of 40 categories of documents, including all correspondence between LAUSD and appointed and elected officials of the City of Carson relating to site selection, location, and construction of the proposed high school, as well as copies of all projected busing patterns and busing studies related to the project.

On February 7, 2006, LAUSD acknowledged that the records being sought were public records under the CPRA, but refused to produce them stating, "we are unable to make those records available because this request is . . . from a government agency, as opposed to a member of the public . . . ." LAUSD asserted that the CPRA did not confer local agencies or their officers (such as City Attorney Shannon) the right to inspect public records as they were not "persons" or "members of the public" under the Act.

On February 15, 2006, City Attorney Shannon responded by letter to LAUSD stating, "Your analysis of LAUSD's legal duty under the [CPRA] is incorrect . . . . [¶] . . . [¶] '. . . [A]ccess to information concerning the conduct of the people's business is a fundamental and necessary right of every person

in this state.' " City Attorney Shannon asserted that the City was entitled to the documents because it was a municipal corporation, and "corporations" were "persons" entitled to receive documents pursuant to [CPRA's] section 6252, subdivision (c). Additionally, City Attorney Shannon stated he was entitled to the documents pursuant to section 6252.5 as "an elected official who is attempting to carry out his duties as a representative of the City Council, City Management and the citizens of the City . . . ."

On April 6, 2006, the City filed a verified petition in the Superior Court for access to public records, seeking an order to direct LAUSD to turn over the requested documents. (§ 6258; see, *post*, fn. 4.)

Following a hearing, the trial court granted the petition and directed LAUSD to produce the requested documents. Thereafter, the trial court apparently ruled on the City's request for attorney fees and costs and entered an August 11, 2006, "judgment granting petition for access to public records" against LAUSD. We construe the "judgment" as an order directing the disclosure of public records.

LAUSD has filed a petition in this court for extraordinary relief requesting a stay of the August 11, 2006, order directing production of the public records. (§ 6259, subd. (c).)[2] We stayed enforcement of the "judgment" and issued an order to show cause directing the parties to appear for argument on the issues raised in the petition. The City and City Attorney Shannon have filed an opposition and LAUSD has filed a reply.

## DISCUSSION

The only issue before us is whether the City and City Attorney Shannon have standing to request public records from LAUSD. The resolution of this issue turns on whether the City or City Attorney Shannon is entitled to inspect LAUSD's records under the Act.

1. *The California Public Records Act (CPRA).*

"Implicit in the democratic process is the notion that government should be accountable for its actions. In order to verify accountability, individuals must have access to government files. Such access permits checks against the arbitrary exercise of official power and secrecy in the political process." (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651, fn. omitted [230 Cal.Rptr. 362, 725 P.2d 470].)

---

[2] A court order directing the disclosure of public records is not appealable, but is immediately reviewable by petition for extraordinary writ. (§ 6259, subd. (c); *Filarsky v. Superior Court, supra*, 28 Cal.4th at p. 426.)

The CPRA "replaced a hodgepodge of statutes and court decisions relating to disclosure of public records. [Citations.] Its preamble declares 'that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state.' (§ 6250; [citation].)" (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1338 [283 Cal.Rptr. 893, 813 P.2d 240].) The CPRA was enacted "for the explicit purpose of 'increasing freedom of information' by giving the public 'access to information in possession of public agencies' [citation]." (*CBS, Inc. v. Block, supra*, 42 Cal.3d at p. 651.) Disclosure holds government agencies accountable by verifying their actions. (*BRV, Inc. v. Superior Court* (2006) 143 Cal.App.4th 742, 750 [49 Cal.Rptr.3d 519].) The Act was conceived broadly to "require 'full agency disclosure unless information is [statutorily] exempted . . . .' [Citation.]" (*Times Mirror Co. v. Superior Court, supra*, at p. 1338.)

The CPRA provides for inspection of public records maintained by state and local agencies, including local school districts. (*Bakersfield City School Dist. v. Superior Court* (2004) 118 Cal.App.4th 1041, 1045 [13 Cal.Rptr.3d 517].)

"In 2004, California voters approved Proposition 59, which enshrined in our state Constitution the public's right to access records of public agencies. (Cal. Const., art. I, § 3, subd. (b).) . . . The amendment requires the Public Records Act to 'be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access.' (Cal. Const., art. I, § 3, subd. (b), par. (2).) Such was the law prior to the amendment's enactment. [Citation.]" (*BRV, Inc. v. Superior Court, supra*, 143 Cal.App.4th at pp. 750–751.)

Section 6252 provides the following definitions to be used for purposes of the CPRA.

"(a) 'Local agency' includes a county; city, whether general law or chartered; city and county; school district; municipal corporation; district; political subdivision; or any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952.

"(b) 'Member of the public' means any person, except a member, agent, officer, or employee of a federal, state, or local agency acting within the scope of his or her membership, agency, office, or employment.

"(c) 'Person' includes any natural person, corporation, partnership, limited liability company, firm, or association.

"(d) 'Public agency' means any state or local agency.

"(e) 'Public records' includes any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics. 'Public records' in the custody of, or maintained by, the Governor's office means any writing prepared on or after January 6, 1975.

"(f) 'State agency' means every state office, officer, department, division, bureau, board, and commission or other state body or agency, except those agencies provided for in Article IV (except Section 20 thereof) or Article VI of the California Constitution.

"(g) 'Writing' means any handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored."

Section 6252.5 provides, "Notwithstanding the definition of 'member of the public' in Section 6252, an elected member or officer of any state or local agency is entitled to access to public records of that agency on the same basis as any other person. Nothing in this section shall limit the ability of elected members or officers to access public records permitted by law in the administration of their duties. [¶] This section does not constitute a change in, but is declaratory of, existing law."

Section 6253, subdivisions (a) and (b) provides, in part, that "every person has a right to inspect any public record [and that e]xcept with respect to public records exempt from disclosure . . . each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable."[3]

---

[3] Section 6253, subdivisions (a) and (b) provides:

"(a) Public records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided. Any reasonably segregable portion of a record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law.

"(b) Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable. Upon request, an exact copy shall be provided unless impracticable to do so."

■ .If a request for public records is denied, the requesting party may file a verified petition for injunctive or declaratory relief in the trial court seeking a disclosure order. (§§ 6258, 6259.)[4]

The entity attempting to deny access has the burden of proof and must " 'justify withholding any record by demonstrating that . . . on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record.' [Citation.]" (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071 [44 Cal.Rptr.3d 663, 136 P.3d 194], quoting § 6255, subd. (a).)

"[T]he interpretation of the Public Records Act, and its application to undisputed facts, present questions of law that are subject to de novo appellate review. (*CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 905–906 [110 Cal.Rptr.2d 889].)" (*BRV, Inc. v. Superior Court, supra*, 143 Cal.App.4th at p. 750; accord, *Times Mirror Co. v. Superior Court, supra*, 53 Cal.3d at p. 1336.)

■ In construing the CPRA and other statutes, "our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including

---

[4] Section 6258 reads in part:

"Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter."

Section 6259 provides in pertinent part:

"(a) Whenever it is made to appear by verified petition to the superior court . . . that certain public records are being improperly withheld from a member of the public, the court shall order the officer or person charged with withholding the records to disclose the public record or show cause why he or she should not do so. . . .

"(b) If the court finds that the public official's decision to refuse disclosure is not justified under Section 6254 or 6255, he or she shall order the public official to make the record public. . . .

"(c) . . . [A]n order of the court, either directing disclosure by a public official or supporting the decision of the public official refusing disclosure, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ. . . ."

the ostensible objects to be achieved and the legislative history. [Citation.] In such circumstances, we choose the construction that comports most closely with the Legislature's apparent intent, endeavoring to promote rather than defeat the statute's general purpose, and avoiding a construction that would lead to absurd consequences. [Citation.]" (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

### 2. *The City is entitled to the public records.*

LAUSD admits the documents requested are public records subject to disclosure and there is no exception precluding disclosure. LAUSD also admits it is a public agency from which public records can be sought. LAUSD contends, however, that neither the City, which is a municipal corporation, nor City Attorney Shannon, who is an elected officer, has a right to access LAUSD's public records because they are not "persons" entitled to those records.

LAUSD's argument is primarily focused on a strict examination of the statutory language. LAUSD argues as follows: (1) Section 6253 grants "every person" the right to inspect public records; (2) "person" is defined in section 6252, subdivision (c) to include "any natural person, corporation, partnership, limited liability company, firm, or association"; (3) this definition of "person" does not include a "municipal corporation" or an "elected officer"; (4) the words used in section 6252 to define a "person" are most commonly associated with private individuals and entities; and (5) only "persons" are entitled to request records and not local agencies nor elected officials. Thus, neither the City nor City Attorney Shannon is entitled to the public records.

We first address the City's standing to request the public records from LAUSD. Thereafter, we address City Attorney Shannon's standing to request the records and LAUSD's argument that he is not a "member of the public."

With regard to the City, LAUSD makes the following additional points: Had the Legislature intended to include a "municipal corporation" in section 6252, subdivision (c)'s definition of "person" it would have done so, as the Legislature did in defining "local agency" in subdivisions (a), (d), and (f) of section 6252 and as it has done in a number of other statutes. (See, e.g., Civ. Code, § 1633.2; Code Civ. Proc., § 676.1; Corp. Code, § 18030.) The specific enumeration of governmental entities in one part of the statute, but not in another, weighs heavily against a conclusion that the Legislature intended to include such entities in the definition of "persons." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 [48 Cal.Rptr.3d 108, 141 P.3d 225] (*Wells*).) "In other contexts, the Legislature has demonstrated that similar definitions of 'persons' do not include public entities, and . . .

legislators know how to include such entities directly when they intend to do so." (*Ibid.,* citing among others, the definition of "person" in Fair Employment and Housing Act, § 12925, subd. (d).) "A traditional rule of statutory construction is that, absent express words to the contrary, governmental agencies are not included within the general words of a statute. [Citations.]" (*Wells, supra,* at p. 1192.)

Many of LAUSD's arguments involve maxims of statutory construction which are helpful in understanding the meaning of statutes when the legislative intent is unclear. However, they cannot override "positive indicia of a contrary legislative intent." (*Wells, supra,* 39 Cal.4th at p. 1193.) To decipher a statute, we must not only examine its language, but also its structure and history. (*Ibid.*)

■ We begin by recognizing that there is an exception to the traditional rule of statutory construction that absent express words to the contrary, governmental agencies are not included within the general words of a statute. That exception is: "[G]overnment agencies are excluded from the operation of general statutory provisions 'only if their inclusion would result in an infringement upon sovereign governmental powers. . . . Pursuant to this principle, governmental agencies have been held subject to legislation which, by its terms, applies simply to any "person." [Citations.]' [Citations.]" (*Wells, supra,* 39 Cal.4th at p. 1192.)

For example, in *State of California v. Marin Mun. W. Dist.* (1941) 17 Cal.2d 699 [111 P.2d 651], a Streets and Highways Code provision defined "person" to include " 'any person, firm, partnership, association, corporation, organization, or business trust' " and did *not* expressly include any governmental entities. However, a county was held subject to the statute and thus, the Department of Public Works was entitled to order the "county" as a "person" to move its pipeline as necessary for public safety or highway improvement. (17 Cal.2d at p. 704.)

■ Thus, even though governmental agencies are not expressly included in section 6252, subdivision (c)'s definition of a "person," the City is to be included in that definition unless to do so would infringe upon sovereign powers.

LAUSD contends the City, as a governmental agency, is not to be included in the definition of "person," and thus may not seek LAUSD's public records because to do so would infringe "upon one of the state's most basic sovereign powers, public education." LAUSD suggests mandating it to disclose documents would unnecessarily divert funds away from its core educational function. This contention is unpersuasive.

As LAUSD acknowledges, it is mandated by section 6253 to make open for inspection and to copy public records upon the payment of fees to cover duplication costs, or a statutory fee, if applicable, unless it is impracticable to do so.[5] However, LAUSD suggests there are additional costs that divert funds from its core purpose of education when there is a disclosure request. LAUSD notes that in fulfilling a disclosure request under the Act, it incurs expenditures in addition to the copying charges it will have to bear. These include nonreimbursable indirect costs in producing documents (*North County Parents Organization v. Department of Education* (1994) 23 Cal.App.4th 144, 146–148 [28 Cal.Rptr.2d 359]), attorney fees in responding to petitions seeking documents (§ 6259, subd. (d); *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 484 [23 Cal.Rptr.2d 412] [award of costs to public agency under CPRA limited to actions where request is frivolous]), and potentially the payment of the requesting party's attorney fees if the court orders disclosure (§ 6259, subd. (d); *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1343 [64 Cal.Rptr.2d 477]). However, the nonreimbursable indirect costs are not significant in light of LAUSD's constitutionally mandated governmental function to disclose public records. We perceive no infringement upon LAUSD's sovereign governmental powers to include municipal corporations, such as the City, into the definition of "persons" in section 6252.

Additionally, we cannot ignore the fact that if LAUSD incurs expenses in complying with the City's request for public documents, such expenses are necessitated only because the City must fulfill its own sovereign purpose. The City believes a proposed LAUSD project may have a dramatic impact on the City's citizens, traffic, and fire and police services in its surrounding neighborhoods. In order to assess that impact and whether the City should take other protective measures, the City must be able to evaluate LAUSD's proposal.

Further, the ultimate purpose of the CPRA is to encourage full disclosure and openness in governmental affairs. Thus, one governmental entity should not hesitate to provide public records to another governmental entity.

---

[5] Section 6253 reads in pertinent part:

"(a) Public records are open to inspection at all times during the office hours of the state or local agency and every person has a right to inspect any public record, except as hereafter provided. Any reasonably segregable portion of a record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law.

"(b) Except with respect to public records exempt from disclosure by express provisions of law, each state or local agency, upon a request for a copy of records that reasonably describes an identifiable record or records, shall make the records promptly available to any person upon payment of fees covering direct costs of duplication, or a statutory fee if applicable. Upon request, an exact copy shall be provided unless impracticable to do so."

■ Our conclusion that the City is a "person" entitled to request documents from another governmental entity is the only rational and reasonable interpretation of the statute. "Where more than one statutory construction is arguably possible, our 'policy has long been to favor the construction that leads to the more reasonable result. [Citation.]' (*Webster v. Superior Court* (1988) 46 Cal.3d 338, 343 [250 Cal.Rptr. 268, 758 P.2d 596].) This policy derives largely from the presumption that the Legislature intends reasonable results consistent with its apparent purpose. [Citation.] [O]ur task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results. [Citations.]" (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1291 [48 Cal.Rptr.3d 183, 141 P.3d 288].)

We acknowledge that the statutory scheme is not a model of clarity, when applied to the factual situation before us. However, an absurd result would follow if we were to strictly construe sections 6252 and 6253 to preclude the City from obtaining documents from LAUSD.

The following illustrates this absurdity: The hypothetical John Doe and Mary Doe residing in the City are considered "natural persons" pursuant to section 6252, subdivision (c). They can send a letter to LAUSD and request the same public documents that have been described by City Attorney Shannon in his January 26, 2006, letter. City Attorney Shannon's mother, father, sister, and brother also are "natural persons" pursuant to section 6252, subdivision (c) and thus, have a right to seek public records from LAUSD. In that LAUSD concedes that the records requested are public, LAUSD will have to comply with the requests from John Doe and Mary Doe, as well as the requests of members of the hypothetical Shannon family. Once LAUSD provides the records, these persons can simply walk down the street to the office of any representative of the City, including City Attorney Shannon's office, and drop the items on a desk. We must interpret the Act broadly to "require 'full agency disclosure unless information is [statutorily] exempted . . . .' [Citation.]" (*Times Mirror Co. v. Superior Court, supra,* 53 Cal.3d at p. 1338.) We come to an absurd result and ignore the CPRA's "strong policy in favor of disclosure of public records" (*Bakersfield City School Dist. v. Superior Court, supra,* 118 Cal.App.4th at p. 1045; see *Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 [19 Cal.Rptr.2d 882, 852 P.2d 377]) if we conclude that all natural persons, including all City of Long Beach residents and all City Attorney Shannon's family members, are entitled to access the public records in LAUSD's possession, but the City, who is charged with conducting the City's business, is not entitled to the very same records.

LAUSD's construction of the CPRA's statutory scheme results in prohibiting one governmental entity from obtaining public records from another governmental entity is unduly restrictive. To construe the Act in the manner articulated by LAUSD ignores its purpose of providing openness in governmental affairs (*BRV, Inc. v. Superior Court, supra,* 143 Cal.App.4th at p. 750), and contravenes the CPRA's purpose to provide "[m]aximum disclosure of the conduct of governmental operations" (*CBS, Inc. v. Block, supra,* 42 Cal.3d at pp. 651–652) and to hold government agencies accountable by verifying their actions. (*BRV, Inc. v. Superior Court, supra,* at p. 750.)

"We will not adopt '[a] narrow or restricted meaning' of statutory language 'if it would result in an evasion of the evident purpose of [a statute], when a permissible, but broader, meaning would prevent the evasion and carry out that purpose.' [Citation.]" (*Copley Press, Inc. v. Superior Court, supra,* 39 Cal.4th at pp. 1291–1292.)[6]

Thus, in defining "persons," the Legislature did not intend to exclude municipal corporations such as the City.

### 3. *City Attorney Shannon is entitled to the records.*

City Attorney Shannon also is entitled to access the records under the CPRA.

As stated above, LAUSD contends that because the definition of "person" does not include an "elected officer," City Attorney Shannon is not entitled to the documents. LAUSD argues that City Attorney Shannon is not a "member of the public" because section 6252, subdivision (b) specifically exempts officers of local agencies and because section 6259, subdivision (a) permits disclosure only if the "records [were] being improperly withheld from a member of the public . . . ."

As quoted above, section 6252.5 provides that "Notwithstanding the definition of 'member of the public' in Section 6252, an elected member or officer of any state or local agency is entitled to access to public records of *that* agency on the same basis as any other person. Nothing in this section shall limit the ability of elected members or officers to access public records permitted by law in the administration of their duties. [¶] This section does not constitute a change in, but is declaratory of, existing law." (Italics added.)

---

[6] In its reply, LAUSD contends the City is not prejudiced if the City cannot obtain the records through a CPRA disclosure request because LAUSD is performing an environmental impact report and the relevant information will be disclosed as part of that proceeding. However, even if the City has an alternative means to access the information, that should not prohibit it from obtaining the documents under the CPRA.

Focusing on the word "that" in the first sentence of section 6252.5, LAUSD contends elected members or officers are only entitled to records of their *own* agency.

To support this analysis, LAUSD points to the legislative history of CPRA's section 6252.5, which was part of a Senate bill designed to amend the CPRA to require state and local agencies to provide electronic files. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 143 (1997–1998 Reg. Sess.) Digest, Aug. 19, 1998.)[7] (Senate Floor Analysis.) The bill also amended or added other sections within the Act, including adding section 6252.5. The legislative history of section 6252.5 available to us is scant. Some documents, as noted by LAUSD, state that the bill was intended to assure that "an elected member or officer of any state or local agency is entitled to access to public records of *that* agency on the same basis as any other person, and states this is declaratory of existing law." (Sen. Floor Analysis, *supra*, at p. 4, italics added; Sen. Rules Com., 3d reading analysis of Sen. Bill No. 143 (1997–1998 Reg. Sess.) Aug. 5, 1998.)[8] The proposed change had been originally introduced in a prior bill that was vetoed by Governor Wilson for other reasons. (See Governor's veto message to Sen. on Sen. Bill No. 143 (1997–1998 Reg. Sess.) Oct. 12, 1997.) A Senate Judiciary analysis of the vetoed bill stated that the definition of "member of the public" had "been used as a basis for withholding public records from elected officials" and section 6252.5 would clarify the law by ensuring "that an elected member or officer of any [public] agency" has "the same access rights to public records" of that agency "as any other person." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 74 (1997–1998 Reg. Sess.) Mar. 11, 1997.)

However, other documents in the legislative history of Senate Bill No. 143 do not include any limitations and do not suggest the new statute was designed *only* to enable public officials to obtain documents from their *own* agencies. For example, one analysis of the bill states that section 6252.5 "[c]larifies that public officials are entitled to access public records on the same basis as any other person." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 143 (1997–1998 Reg. Sess.) June 30, 1998, p. 1.)[9] Another analysis indicates that the bill "would provide that, notwithstanding [the definition of 'member of the public'], an elected official of any state agency is a 'member of the public' entitled to access to public records. It would provide that this section is declaratory of existing law." (Sen. Rules Com., Off. of Sen. Floor

---

[7] <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_0101-0150/sb_143_cfa_19980818_204012_sen_floor.html> [as of May 30, 2007].

[8] <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_0101-0150/sb_143_cfa_19980805_154629_asm_floor.html> [as of May 30, 2007].

[9] <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_0101-0150/sb_143_cfa_19980629_150454_asm_comm.html> [as of May 30, 2007].

Analyses, 3d reading analysis of Sen. Bill No. 143 (1997–1998 Reg. Sess.) Jan. 26, 1998, p. 2.)[10] In light of the sparse legislative history available to us and the conflict in the history on the crucial point, we cannot conclude, as urged by LAUSD, that section 6252.5 was designed to enable elected members or officers to access only public records from their *own* agencies. Stated differently, we have found nothing in the legislative history of section 6252.5 suggesting that the Legislature intended to prevent one governmental agency from obtaining public records of another governmental agency.

Additionally, contrary to LAUSD's position, the content of section 6252.5 supports City Attorney Shannon's position that he is entitled to the requested public records. The first sentence in section 6252.5 specifically authorizes this result. It states, "Notwithstanding the definition of 'member of the public' in Section 6252, an elected member or officer of any state or local agency *is* entitled to access to public records of that agency *on the same basis as any other person.*" (Italics added.) The second sentence of section 6252.5 contains no restrictions. It does not limit, as LAUSD urges, access by an elected member or officer to the records of his or her own agency. Rather, it appears to be a broad grant of authority as it states that "Nothing in this section shall limit the ability of elected members or officers to access public records permitted by law in the administration of their duties."

Thus, a reasonable interpretation of section 6252.5 is that the Legislature did not intend to draw a distinction between records of an officer's own agency and those from another agency. Section 6252.5 does not limit public officials access to the records of their own agency. Thus, City Attorney Shannon is a "member of the public" entitled to access to public records.

We must also examine if City Attorney Shannon is a "natural person" pursuant to section 6252. Like all other "natural persons" in that section, City Attorney Shannon is entitled to access public records. His status as a natural person is not extinguished because he is also an officer of the City.[11] As illustrated above, City Attorney Shannon can ask his mother, father, sister, brother, or any John Q. Public to obtain for him LAUSD's public records. It makes no sense to have City Attorney Shannon obtain the records in that fashion as the law does not countenance such subterfuge.

[10] <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_0101-0150/sb_143_cfa_19980127_165753_sen_floor.html> [as of May 30, 2007].

[11] LAUSD notes that sections 6262, 6263, and 6264 specifically grant district attorneys right to access public records and suggests this would have been unnecessary if all elected officials were entitled to public records. However, these sections, like section 6252.5, could merely be declarations of existing law clarifying that district attorneys have access to the records.

City Attorney Shannon is entitled to request public records in possession of LAUSD.

### 4. *Two recent cases do not alter our result.*

LAUSD points to two recent Supreme Court cases to argue it was not required to release the requested documents. These two cases, *Wells, supra*, 39 Cal.4th 1164, and *State ex rel. Harris v. PricewaterhouseCoopers, LLP* (2006) 39 Cal.4th 1220 [48 Cal.Rptr.3d 144, 141 P.3d 256] (*Harris*), addressed the meaning of "person" in California's False Claims Act (CFCA) (Gov. Code, § 12650 et seq.), providing that any "person" who knowingly presents a false claim for payment or approval is liable to the public agencies.

In *Wells, supra*, 39 Cal.4th 1164, the issue was whether a lawsuit could be brought against charter schools under the CFCA and the unfair competition law (UCL) for breach of contract and misrepresentation. Among other holdings, *Wells* held (1) a public school district is not a "person," as defined in the CFCA (§ 12650 et seq.), and may not be sued under the terms of the CFCA; but (2) charter schools, and the individuals, corporations, entities, or organizations that operate them *are* "persons" subject to suit under the CFCA and UCL (Bus. & Prof. Code, § 17200 et seq.) and are not exempt from either law merely because they are deemed part of the public school system. (*Wells, supra*, at p. 1179.)

*Wells, supra*, 39 Cal.4th 1164, noted that the "language, structure, and [legislative] history" of the CFCA provided "positive indicia" to "strongly suggest" that public entities, including school districts were not "persons" within the CFCA's definition. The legislative history demonstrated an intent to excise governmental entities from the category of person who may be sued. (39 Cal.4th at p. 1193.) *Wells* exempted public school districts from suit under the CFCA based on a rationale that allowing such suits would undermine their sovereign powers by impeding their fiscal ability to carry out their core mission. (39 Cal.4th at pp. 1193–1197.)

In *Harris, supra*, 39 Cal.4th 1220, the City and County of San Francisco, represented by its district attorney and city attorney, filed an action to recover funds from a business on behalf of the State of California. The court noted that subdivision (c)(2) of section 12652 specially described a CFCA action as an action " 'filed by a private person' " (*Harris, supra*, at p. 1230, italics omitted) and concluded a public entity is not a "person" who may bring a qui tam action upon a false claim involving, not its own funds, but funds of another public agency. (*Id.* at p. 1238.)

Both *Wells* and *Harris* noted that the limited evidence from the legislative history suggested public entities were not intended to be "persons" within the statute. (*Wells, supra,* 39 Cal.4th at p. 1191; *Harris, supra,* 39 Cal.4th at p. 1230.)

LAUSD points to the analysis used in *Wells* and *Harris,* notes that the definition of "person in the CFCA (Gov. Code, § 12650, subd. (b)(5) [' "Person" includes any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust.' "]) is almost identical to the definition in section 6252, subdivision (c), states that the two definitions are both in the Government Code, and urges that the results must be the same, i.e., that a governmental agency is not a "person."

■ In analyzing the CPRA, we have followed the analytical approach in *Wells* and *Harris.* Our results are different because the subject matter and public policies are different. (Cf. *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 201 [46 Cal.Rptr.3d 41, 138 P.3d 193] [statutory construction rule that identical statutory language should be interpreted the same way applies only when statutes in question cover same or analogous subject matter].) And we must give a realistic interpretation of the CPRA.

The CFCA "is designed to supplement governmental efforts to identify and prosecute fraudulent claims made against state and local governmental entities by authorizing private parties (referred to as qui tams or relators) to bring suit on behalf of the government. [Citation]. The ultimate purpose of the [CFCA] is to protect the public fisc. (*Ibid.*)" (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1677 [1 Cal.Rptr.3d 312].) The conclusions in *Wells* and *Harris* are consistent with that purpose. Thus, as stated above, *Wells* has held that public school districts cannot be sued under the CFCA because the result contravenes the purpose of the statute and impedes, rather than protects, their fisc. (*Wells, supra,* 39 Cal.4th at pp. 1193–1197.)

■ In contrast, the purpose of the CPRA is to have openness in government and to enable full disclosure of public records. This policy is enshrined in the Constitution. (Cal. Const., art. I, § 3, subd. (b).) To fulfill that purpose, governmental entities must have access to the public records of other agencies. LAUSD offers no public policy sufficiently strong to justify precluding one governmental agency from obtaining the public records maintained by another.

## DISPOSITION

The request for a writ is denied. The stay issued on October 3, 2006, is vacated. Costs on appeal are awarded to City of Long Beach.

Klein, P. J., and Kitching, J., concurred.